AMERICAN CLOAK & SUIT MFRS.' ASSN., INC., Plaintiff, *v.* BROOKLYN LADIES' GARMENT MFRS.' ASSN., INC., Defendant.

Supreme Court, New York County, November 24, 1931.

*Morris Hillquit*, for the plaintiff.

*McCooey & Conroy*, for the defendant.

COTILLO, J. This is an application for a temporary injunction to restrain the defendant from violating the provisions of its agreement with plaintiff. The agreement, the violation of which it is sought to prevent, is an aftermath of an agreement made between the plaintiff, representing 700 manufacturers in the cloak and suit industry with the union of workers. The contract last referred to was the result of the joint efforts of impartial public-spirited citizens of the highest standing in the community, in co-operation with the representatives of the employees and the employers, to promote industrial peace in what is probably the single largest industry in the city of New York and certainly one of the very largest in the entire country.

The defendant was not a party to that agreement, but by a later understanding in writing between the plaintiff and the defendant the latter obtained all the advantages of it, upon condition that its members assume the obligations of such collective agreement. The defendant in effect became affiliated with the plaintiff as the parent organization and in dealings with the labor union plaintiff repre-

sented its own members and also those of defendant. This affiliation represented an advantage to both employer and employee. On the one hand, it added strength to the bargaining power of the employers with the employees; on the other, it assured the workers of a cohesive compact with substantially the entire industry instead of with isolated factors of it. To the defendant, too, it gave the advantage of an agreement without the necessity of compelling its members separately to join plaintiff's organization. Such benefits, however, carried reciprocal obligations. To keep faith with the union the plaintiff retained disciplinary supervision and control over its members to see that the standards guaranteed in what may be called the industrial peace agreement were maintained. This involved, among other things, the right to investigate shops and factories as to labor conditions and as to prices and terms upon which the member contracted for work. Defendant has now refused to permit plaintiff to make the required investigation and to retain the contractual supervision, unless the defendant in turn is permitted to investigate the conduct of the members of the parent organization. There is no provision for such right in the defendant, nor is there any evidence worthy of the name that plaintiff's members are themselves violating the standards set in the contract; consequently the main argument which defendant resorts to is that the collective agreements are illegal and void in that they create a monopoly under the Donnelly Anti-Trust Act (General Business Law, §§ 340–346, as amd.).

There is no doubt of the validity of collective agreements between bodies of employers and labor unions, which is binding upon the constituent members of the contracting parties. In *Maisel* v. *Sigman* (123 Misc. 714) such an agreement was upheld in no uncertain language. While the agreement between plaintiff and the labor union is not directly in question, the one between plaintiff and defendant is virtually a supplementary agreement which adds to the force of the contract between the employers and the employees. The defendant has apparently overlooked the fact that the adage that " in union there is strength," which seems to have been applied exclusively to labor unions, is in this particular instance just as applicable to employers. In the cloak and suit industry we have no giant corporations like those in the steel and motor fields. The individual employer is quite powerless to bargain on his own terms with a powerful labor organization; nor would the labor union itself find it desirable to deal in detail with every small shop, preferring, I venture to say, to deal with an aggregation which had the same disciplinary power over its members as the labor organization has over its own. A collective agreement is, therefore, of

mutual advantage to employers as well as employees, if arrived at on the basis of an equal footing.

The defendant has all the advantages of plaintiff's efforts in presenting a united front in future bargaining with a powerful labor union, without the obligation of compelling its members individually to join plaintiff's organization and pay dues to it. Its attempt now to repudiate its obligation on specious grounds should not be countenanced. Arguments directed against the monopolistic character of the agreement are reminiscent of a school of economic theory which is obsolete because it has been found practically unworkable. Such arguments tempt one to paraphrase the classic remarks of that great jurist, Mr. Justice Holmes, in his dissent in *Lochner* v. *New York* (198 U. S. 45, 75, 76), by saying that the Donnelly Anti-Trust Law does not enact Herbert Spencer's " Social Statics " or the *laissez-faire* doctrines of Adam Smith.

The motion for an injunction is granted. Settle order.